# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES L. HOLLINGHEAD and,    :
MARK SIMPSON    :    Civil No. 1:12-CV-00260
   Plaintiffs    :
   :    (Judge Conner)
   v.    :
   :    (Magistrate Judge Carlson)
CITY OF YORK, PENNSYLVANIA    :
YORK SEWER AUTHORITY; and    :
MONACACY VALLEY ELECTRIC,    :
INC.,    :
   Defendants    :

## REPORT AND RECOMMENDATION

### I.　　Statement of Facts and of the Case

#### A.　　The Parties

This is a discrimination action brought by Plaintiffs, James L. Hollinghead ("Hollinghead") and Mark A. Simpson ("Simpson")(collectively, the "Plaintiffs"), seeking damages and other relief as a result of alleged racial discrimination in their employment with the City of York and the York Sewer Authority. The Plaintiffs also allege that they were subjected to acts of retaliation at the hands of the City of York and the York Sewer Authority when they complained about these discriminatory actions. Further, the Plaintiffs allege that Monacacy Valley Electric, Inc., a private company which worked at the sewer facility, indulged in acts that rose to the level of intentional infliction of emotional distress, a tort under the common law of Pennsylvania, and conspired with state actors to violate their civil rights. The

Plaintiffs brought this action on February 9, 2012, pursuant to Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), the Pennsylvania Human Relations Act (the, "PHRA"), 42 U.S.C. §1983, and asserted pendent common law claims under the laws of Pennsylvania. (Doc. 1, p.2.)

In their complaint, the Plaintiffs named three Defendants: The City of York, Pennsylvania, the York Sewer Authority and Monacacy Valley Electric, Inc. (Collectively, "Defendants"). The City of York – which is not a party to these motions – is a third-class city of the Commonwealth of Pennsylvania operating under a home rule charter pursuant to the Third Class City Charter Law of 1957. (Id. at p. 3.) The primary office of the City of York is located at 50 West King Street, York, York County, Pennsylvania. (Id.) The Plaintiffs allege that the City of York operates the York Sewer Authority (the "Sewer Authority"), an agency or department of the government of the City of York, which is responsible for the city sewer treatment plant.[1] (Id.) Monacacy Valley Electric, Inc. ("Monacacy"), in turn, is a corporation with the primary place of business at 1925 Frederick Pike, Littlestown, Pennsylvania. (Id. at p. 4.) Plaintiffs alleged that Monacacy had a contract with the Sewer Authority dated May 18, 2010, to provide work for the Sewer Authority for up to five hundred forty-five (545) days. (Id.)

---

[1] Plaintiffs also refer to sewer treatment plant as the wastewater treatment plant.

## B.    <u>The Complaint's Well-Pleaded Facts</u>

According to the well-pleaded facts set forth in the complaint this work-place discrimination began as a dispute regarding the cleanliness of a shower located at the sewer authority that was used by both sewer authority employees and Monacacy Electric's workers. On July 7, 2010, Simpson expressed concern to Monacacy employees regarding the condition of the shower room at the Sewer Authority. (<u>Id.</u> at p. 5) According to Simpson, the shower was left in a messy and dirty condition by employees of Monacacy. (<u>Id.</u>) The shower was not to be used by the Monacacy employees; however, Simpson did not have a problem with the Monacacy employees using the shower, but requested that they keep it clean. (<u>Id.</u>) Despite Simpson's protests, the employees of Monacacy continued to leave the shower room in a messy and dirty condition. (<u>Id.</u> at p. 6.) Simpson informed his supervisor, Chad Arnold, about the condition of the shower and was told to lock the door. (<u>Id.</u>) The next day a Monacacy supervisor asked about the lock in the presence of other Monacacy employees who responded in an "angry and menacing manner." (<u>Id.</u>)

Hollinghead then alleged that on July 16, 2010, he found a noose near the shower area in reaction to Simpson placing a lock on the shower room door, an anonymous gesture which the Plaintiffs construed to be racially intimidating. (<u>Id.</u>) The Plaintiffs then alerted others to their concerns. On July 18, 2010, Hollinghead

reported the noose to Simpson, the Teamsters, Local 776 Union Steward. (Id.) On

July 19, 2010, Simpson reported the incident to Chad Arnold, the Operations Manager

of the wastewater treatment plant. (Id. at p. 7) On July 19, 2010, Mr. Arnold reported

the incident to the General Manager of the wastewater treatment plant, Steve Douglas.

(Id.) Three days later, on July 22, 2010, Simpson spoke with C. Kim Bracey, Mayor,

City of York, about the incident. (Id.) The Plaintiffs further allege that the noose was

removed and placed in Mr. Douglas' office who displayed it on a hook in his office

and showed it to Simpson. (Id.)

On July 28, 2010, a second noose was again seen in the sewer maintenance

building and reported to Mr. Douglas, who again displayed it on a hook in his office

and showed it to Simpson. (Id.) The Plaintiffs allege that no action was taken by

Monacacy or the Sewer Authority to have the noose removed or to avoid repetition of

this conduct. (Id.) Through this inaction, the Plaintiffs alleged that Defendants

consented to, permitted and condoned these racially charged and intimidating acts and

failed to take remedial measures to address them. (Id.) According to the Plaintiffs,

the failure to discipline Monacacy employees for this conduct was a function of

business concerns in the Sewer Authority. Specifically, the Plaintiffs alleged that

James Gross, Director of Public Works for York City and Mr. Douglas expressed to

the Mayor that they did not want to have Monacacy removed from the sewer project.

(Id. at p. 8) In August 2010, Thomas Allen Ray, Deputy Business Administrator for

Human Resources, City of York, conducted an investigation and met with the Plaintiffs separately and gave each Plaintiff a letter outlining his report. (Id.) Plaintiffs assert that Mr. Ray made a cursory review of the incidents and failed to perform a meaningful investigation in that he failed to speak with all relevant witnesses. (Id.) Mr. Ray generated a report in which he concluded that the noose was not racially motivated or displayed for the purpose of racial intimidation. (Id.) The Plaintiffs assert that by generating the report with those findings, Mr. Ray acted with the purpose of absolving the Defendants of any wrongdoing and, therefore, consented to, permitted, or condoned the racially offensive actions of the Monacacy employees. (Id.)

In November 2010, the Plaintiffs met with Mayor Bracey to discuss the racial climate at the treatment plant. (Id. at pp. 8-9) The Plaintiffs explained to Mayor Bracey that after they complained to the City of York, Mr. Ray was more aggressive in seeking to punish African Americans. (Id.) The Plaintiffs assert that after speaking with Mayor Bracey, they determined that the City of York was engaging in disparate treatment in that allegations of misconduct by non-Caucasian employees were being reported to the Mayor while allegations of misconduct by Caucasian employees were not being reported to her. (Id.)

In November 2010, the Plaintiffs contacted the Equal Employment Opportunity Commission ("EEOC") regarding the complaints of racial discrimination. (Id. at p.

9) The Plaintiffs further allege that subsequent to contacting the EEOC, the Plaintiffs started receiving dangerous work assignments that they were not previously assigned. (Id.) Plaintiffs allege that they suffered injuries on the job which would not have occurred if they had not received the retaliatory work assignments. (Id.) Hollinghead received assignments exposing him to hazardous chemicals and conditions he had not been exposed to in the past and suffered injuries to his lungs. (Id.) Simpson was not granted assistance in situations where he was granted assistance in the past. (Id.) Additionally, Simpson was denied workers' compensation benefits that were previously approved. (Id.) The Plaintiffs further alleged that the management at the City of York and the Sewer Authority did not require Caucasian employees to perform different and dangerous work assignments and the Caucasian employees were not required to direct or assist the African American Plaintiffs with the assignments. (Id. at p. 9)

The Plaintiffs cross-filed a charge of discrimination with the EEOC and the Pennsylvania Human Relations Commission ("PHRC"). (Id. at p. 5) In his charge of discrimination Hollinghead identified the Responding Party as the "York City Waste Water Treatment Plant," and directed the Notice of Charge to Michael O'Rourke, the Business Administrator for the City of York. (Id.) Simpson, in turn, identified the Responding Party as the "York Waste Water Treatment" and directed the Notice of Charge to Thomas Allen Ray, the Deputy Business Administrator for the City of York

at the York Wastewater Treatment Plant.  (Id.)   On November 14, 2011, Simpson received a right to sue letter.  (Id.).  On November 29, 2011, James Hollinghead received a right to sue letter.  (Id.)

On April 9, 2012, Defendant Monacacy filed a motion to dismiss the Plaintiffs' Complaint. (Doc. 10.)  On April 9, 2012, Defendant Sewer Authority, in turn,  filed a motion to dismiss portions of Plaintiffs' Complaint.  (Doc. 11.)  The parties have now fully briefed these motions to dismiss.  Therefore, we will deem the motions to be ripe for resolution.

For the reasons outlined below, our review of the motions along with the submissions of the parties, leaves us convinced that the Sewer Authority's motion to dismiss Counts I-VI and Count V should be denied since there are issues of fact beyond the pleadings which must be addressed with respect to these defenses asserted by the Sewer Authority.  In addition we recommend that Monacacy's motion to dismiss Counts I-II with respect to the claims brought under Title VII and the Pennsylvania Human relations Act (PHRA) against this company should be granted. Further, Monacacy's motion to dismiss Count V, which alleges that the company conspired with state actors to violate the plaintiffs' civil rights should be also granted. Monocacy's motion to dismiss Count VI, which alleges a state tort of intentional infliction of emotional distress, should be denied, but the Plaintiffs should be directed to file a more definite statement of this particular claim.

## II.    Discussion

### A.    Motion to Dismiss-Standard of Review

Rule 12(b) (6) of the Federal Rules of Civil Procedure, which governs motions to dismiss like the motion lodged by the Defendants in this case, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.2008) ] and culminating with the Supreme Court's decision in Ashcroft v. Iqbal 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather,

in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead

to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

> **B.** **The Defendant Sewer Authority Is Not Entitled to Dismiss Counts I-IV For Failure to Exhaust Administrative Remedies With Respect To Plaintiffs' Claims Under Title VII and the PHRA**

At the outset, the Defendant Sewer Authority alleges that Plaintiffs failed to exhaust their administrative remedies with  respect to their claims under Title VII and the PHRA.  (Doc. 14, p. 5.)  With respect to this exhaustion argument, the Sewer Authority urges us to adopt a very narrow, specific and particular standard for exhaustion, one which would require extraordinarily detailed identification of parties in administrative proceedings to properly exhaust a claim.  Thus, the Sewer Authority alleges that Plaintiffs did not adequately exhaust because they failed to accurately or sufficiently describe the defendants in their Title VII and PHRA claims in their charge of discrimination before the EEOC against the Sewer Authority.  Specifically, the Defendants contends that Plaintiffs did not precisely identify the Sewer Authority as a Responding Party.  (Id. at p. 7)  The Sewer Authority further argues that the Charge

of Discrimination was not filed at the legal address of 345 East Market Street, York, PA. (Id.)

With respect to this issue it appears that Plaintiff Hollinghead identified the Responding Party as the "York City Waste Water Treatment Plant" and directed the Notice of Charge to Michael O'Rourke, the Business Administrator for the City of York. (Id.) Plaintiff Simpson identified the Responding Party as the "York Waste Water Treatment" and directed the Notice of Charge to Thomas Allen Ray, the Deputy Business Administrator for the City of York at the York Wastewater Treatment Plant. (Id.) Despite this degree of specificity, the Sewer Authority alleges that this description was insufficient because the York Wastewater Treatment Plant is operated by the City and not the Sewer Authority. (Id.) The Sewer Authority also asserts that it is a legal entity separate and distinct from the City of York, therefore, it was not properly afforded adequate notice. (Id.) The Sewer Authority alleges that it, therefore, is not liable since the Charge of Discrimination only identified the actual physical wastewater treatment plant operated by the City of York as the respondent. (Id. at p. 8) Finally, the Sewer Authority alleges that the EEOC issued the Plaintiffs right-to-sue letters, but did not specifically issue right-to-sue letters against the Sewer Authority. (Id.)

In opposition, the Plaintiffs assert that, fairly construed, the Complaint and administrative charges allege that the Sewer Authority is an agency or department of

the City of York and is supervised by the City of York's Department of Public Works.

(Id.)  Plaintiffs further allege that 42 U.S.C. §2000e specifically provides that government agencies can be considered an employer under the Act.  (Id.)  Therefore, the Plaintiffs aver that the Sewer Authority was provided with adequate notice of their claims.

Title VII creates a legal framework for the resolution of work-related discrimination claims which first provides for administrative relief in these cases.  In this setting, where Congress has provided administrative agency relief for private parties:

> It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.  McKart v. United States, 395 U.S. 185, 193 (1969). ...[T]he purposes of the exhaustion requirement are to promote administrative efficiency, "respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors," provide courts with the benefit of the agency's expertise, and serve judicial economy by having the administrative agency compile the factual record.  Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986).

Robinson v. Dalton, 107 F.3d1018, 1020 (3d Cir. 1997).

Since any exhaustion defense must be assessed in light of the purposes served by the exhaustion doctrine, it is well-settled that the scope of the complaint before the federal court is not always narrowly limited to the specific charges brought before the EEOC.  Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). Instead, "a district court may assume jurisdiction over [other] claims . . . 'if they are

reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed those claims.' Howze v. Jones & Laughlin Steel Corporation, 750 F.2d 1208, 1212 (3d Cir.1984)." Owens v. Allegheny Valley Sch., CIV. 12-15, 2012 WL 1405935 (W.D. Pa. Apr. 23, 2012).  "The relevant test in determining whether [plaintiff] was required to exhaust [his] administrative remedies ... is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.1996).

These practical principles apply to exhaustion claims like those made here by the Sewer Authority, which are based upon an alleged misidentification of the charged Defendants.  As to such claims:

> "A Title VII action ordinarily may be brought only against a party previously named in an EEOC action." Schafer v. Board of Public Education Of the School District Of Pittsburgh, Pa., 903 F.2d 243, 251–52 (3d Cir.1990) (citing 42 U.S.C. § 2000e–5(f)(1)).  However, the "Third Circuit has recognized an exception to this general rule where (1) the unnamed party received notice of the EEOC complaint and (2) there is a shared commonality of interest with the named and unnamed parties." Christaldi–Smith v. JDJ, Inc. and U.C.C. Total Home, Inc., 367 F.Supp.2d 756, 763–64 (E.D.Pa.2005) (citing Schafer, 903 F.2d at 252).  The appeals court has interpreted "received notice" to mean that the unnamed party had actual notice knowledge of the EEOC complaint.  Christaldi–Smith, Id. at 764 (citing Goodman v. Lukens Steel Company, 777 F.2d 113 127–28 (3d Cir.1985)).

Owens v. Allegheny Valley Sch., CIV. 12-15, 2012 WL 1405935 (W.D. Pa. Apr. 23, 2012)

Judged by these practical precepts, we find that the Sewer Authority, as Defendant, had sufficient notice of the EEOC charges, and shared a commonality of interest with one other named Defendant, the City of York. The charge of discrimination before the EEOC filed by Hollinghead referred to the "York City Waste Water Treatment Plant." (Doc. 11, Ex. A.) Hollinghead's EEOC Complaint was directed to the City of York. (Id.) The allegations in the complaint assert that both the Sewer Authority and the City of York were involved in the operation of the Wastewater Treatment Plant. Given the relationship between the City of York, the Sewer Authority and the Wastewater Treatment Plant, the argument that the notice provided by Hollingshead was insufficient is unpersuasive. Likewise, Simpson addressed his EEOC Complaint to the "York Waste Water Treatment." (Doc. 11, Ex. B) Simpson's EEOC Complaint was then directed to the Deputy Business Administrator, Human Resources for York Wastewater Treatment. (Id.) Again, the association between the City, and the Sewer Authority as the owner of the Wastewater Treatment Plant is sufficiently close, that this notice to the Authority was adequate, and we recommend that the District Court deny the Sewer Authority's motion to dismiss Counts I-IV for failure to exhaust administrative remedies.

**C.** **Defendant Sewer Authority's Motion to Dismiss Count V Because The Authority Was And Is Not the Plaintiffs' Employer Entails Consideration of Matters Beyond The Pleadings and Cannot be Resolved at This Time**

Defendant Sewer Authority also seeks to dismiss an equal protection claim brought by the Plaintiffs, alleging that the Authority could not have treated the Plaintiffs in a disparate fashion based upon race, because the Plaintiffs were not employed by the Sewer Authority. (Doc. 14, p. 9.) Under Title VII, in employment discrimination cases an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C.A. § 2000e(b). Thus, an employment determination often involves factual considerations. Therefore, this contention that someone was not employed by this particular Defendant necessarily entails an analysis of factual matters involving the working relationship between the Plaintiffs, the City of York and the Sewer Authority.

While the Authority strongly contends that it is not the Plaintiff's employer, its argument on this score plainly identifies this issue as a dispute which demands consideration of some matters outside the pleadings, and cannot be resolved on a motion to dismiss. The fact-bound nature of this particular dispute is clearly described by the Defendant in Defendant's pleading which crystallize this factual contest in the

following terms: "Plaintiffs' 'class of one' claim is premised primarily upon the allegation that 'Defendants [including the Authority] treated Plaintiffs differently from similarly situated employees who were not African-American.' Plaintiffs' Complaint, ¶73 (emphasis supplied). The claim, as it pertains to the Authority, fails inasmuch as Plaintiffs were not employed by the Authority. Although Plaintiffs allege in their Complaint that they were employed by both the City of York and the Authority, see id., ¶¶5-6, their allegations in this regard are simply untrue and belie the public record." (Doc. 14, p.9.)

In short, while the Sewer Authority argues that the Plaintiffs err as a matter of fact in making this assertion, at this stage of the litigation we are constrained to accept the facts alleged as true, and rule as a matter of law based upon those asserted facts. When we do this, viewing these allegations in the light most favorable to the Plaintiffs, the Plaintiffs have alleged facts from which it can reasonably be inferred that the Sewer Authority had an employment relationship with the Plaintiffs as the owner of the Wastewater Treatment Plant. While the Authority may ultimately prevail on its claim that these "allegations in this regard are simply untrue and belie the public record," (Doc. 14, p.9), we believe the Plaintiffs have sufficiently alleged their claim of employment by the Defendant Authority. Thus, these claims against the Authority should not be dismissed at this time solely on the pleadings, on the grounds that the Authority does not employ the Plaintiffs.

**D.** **Defendant Sewer Authority's Motion to Dismiss Counts VII Because Plaintiffs Failed To Allege Sufficient Facts To Establish That The Authority Took Adverse Action Against The Plaintiffs For Engaging In Protected Speech Cannot Be Resolved On The Pleadings**

Similar to the argument addressed above, Defendant Sewer Authority alleges that the Plaintiffs could not have been retaliated against for First Amendment protected speech because the Plaintiffs were not employed by the Sewer Authority. (Doc. 14, p. 10.) Defendants further state that the Complaint lacks allegations the alleged reports to the Sewer Authority were a "substantial factor" in any adverse action taken against the Plaintiffs. (Id., p. 11)

The Plaintiffs respond by stating that the Complaint fairly alleges that the Sewer Authority along with the City of York is an employer in relation to the Plaintiffs. (Doc. 16, p. 11.) The Plaintiffs further assert that the Sewer Authority and the City of York acted in concert to deprive the Plaintiffs of their constitutional rights. (Id.) As we discussed above, the Plaintiffs have alleged facts from which it can reasonably be inferred that the Sewer Authority had a relationship to Plaintiffs' employment at the Wastewater Plant.

First Amendment claims are difficult to definitively resolve on a motion to dismiss as they often require consideration of a more complete factual record beyond the mere recitals set forth in the pleadings. The Plaintiffs' complaint articulates a First Amendment retaliation claim based upon their reporting of the allegations of the two

incidents involving a noose and the subsequent disparate and adverse treatment they allegedly received. To ultimately succeed, the Plaintiffs must present evidence to show that they: (1) engaged in a protected activity; (2) that the government took action against the plaintiff at the time of or after the protected action; (3) that the protected activity caused the government to take the action that harmed the plaintiff. Anderson v. Davila, 125 F.3d 148, 148, 161 (3d Cir. 1977). Thus, "[t]he threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).

To qualify for First Amendment protection, a public employee bringing a complaint against his or her employer must first engage in protected speech addressing a matter of public concern, rather than a narrow parochial employment issue. Eichenlaub, 385 F.3d at 282. A public employee's speech, or in this case the public employee's actions in reporting the allegations of the incidents regarding the noose and the different treatment received by the employer based on race, address matters of public concern only when "it can 'fairly considered as relating to any matter of political, social other concern to the community.'" Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (quoting Green v. Phila. Hous. Auth., 105 F.3d 882, 885-86 (3d Cir. 1997)). In assessing the public nature of any speech the Court should "focus on the content, form, and context of the activity in question," Id., and speech will qualify for First Amendment protection only "if attempts 'to bring to light actual or potential

wrongdoing or breach of public trust on the part of government officials.'" Id. quoting

Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993). In contrast when a

"public employee speaks not as a citizen upon matters of public concern, but instead

as an employee upon matters only of personal interest, absent the most unusual

circumstances, a federal court is not the appropriate forum in which to review the

wisdom of a personnel decision taken by a public agency allegedly in reaction to the

employees's behavior." Connick v. Myers, 461 U.S. 138, 147 (1983). Issues of the

public nature of an employee's speech and the adequacy of any government

justification for restriction on speech although frequently raise questions of law, often

those questions typically entail assessment of matters beyond the pleadings. Therefore,

First Amendment retaliation claims may be amenable to resolution as a matter of law,

but typically are addressed as a matter of law on a motion for summary judgment,

which permits consideration of undisputed facts outside the pleadings, rather than upon

motion to dismiss, which is confined to an assessment of well-pleaded matters. See

Garcetti v. Ceballos, 547 U.S. 410 (2006) (affirming summary judgment resolution of

First Amendment retaliation claim).

In this case, at this early stage of the litigation without the benefit of discovery,

we do not have the benefit of a full factual record detailing the Plaintiffs' alleged First

Amendment activities or a description of the Sewer Authority's justification for their

employment decisions. A further analysis of these claims should be undertaken,

therefore, only in the context of a summary judgment motion.  Accordingly, the Sewer Authority's motion to dismiss the Plaintiffs' First Amendment claims should be denied without prejudice to be reconsidered in a properly documented motion for summary judgment.

> **E.     Defendant Monacacy's Motion to Dismiss Counts I-II Because Monacacy Was Not Plaintiffs' Employer Should Be Granted**

Having addressed the Sewer Authority's motion to dismiss, we now turn to the companion motion to dismiss filed by Monocacy Valley Electric Inc.  ( Doc. 10.)  At the outset, in this motion Monacacy asserts that the Plaintiffs' Complaint fails to state a claim upon which relief may be granted in Counts I-II, which alleged Title VII and Pennsylvania Human Relations Act (PHRA) violations,  because the Plaintiffs failed to allege the existence of an employment relationship between themselves and Monacacy.  (Doc. 15, p. 13.)  Monacacy further asserts that the factual allegations in the complaint do not assert that Monacacy exercised control over the Plaintiffs and therefore, cannot be considered the Plaintiffs' employer.  (Id.)

Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e, et seq provides that:

(a)It shall be an unlawful employment practice for *an employer*--

(1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C.A. § 2000e-2(a)(1)(emphasis added).

Under Title VII in employment discrimination cases, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C.A. § 2000e(b). In order to determine if a defendant is an employer, and thus a proper party under Title VII, the courts typically look to the common law agency test which takes into consideration the totality of the circumstances while emphasizing the hiring party's right to control the manner and means of the work that the work is completed. Lattanzio v. Security Nat'l Bank, 825 F.Supp 86, 89 (E.D.Pa. 1993). Yet, while the Plaintiffs' pleadings raise factual issues regarding the Plaintiffs' employment relationship with the Sewer Authority, the complaint lacks any well-pleaded allegations that the Plaintiffs were employed by, or performed any work for Monacacy under the contract it had with the City of York. Quite the contrary, the Plaintiffs specifically alleged in their complaint that they were employees of the City of York and the Sewer Authority. Therefore, the Plaintiffs simply have not made any allegations that they worked for Monacacy or that they performed work at the Wastewater Treatment Plant for Monacacy. Moreover, the Plaintiffs do not present any caselaw to the Court to support their novel and tenuous agency argument, which seems to suggest that Monacacy's mere presence at the water treatment facility premises in some fashion meant that

Monacacy was acting as the Authority's agent when someone placed a noose on the premises. Absent any further well-pleaded allegations that the Plaintiffs were engaged in any work related duties involving Monacacy, the Plaintiffs cannot be considered employees of Monacacy. Therefore, Monacacy is not the Plaintiffs' employer and Count I of the complaint, the Plaintiffs' Title VII claim., should be dismissed.

Similarly, the Plaintiffs also alleged that Monacacy violated the PHRA which also governs conduct between an employer and its employees. 43 P.S. § 955. The PHRA provides that it is unlawful discriminatory practice:

> (a) For any *employer* because of race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor, with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is best able and most competent to perform the services required.

43 Pa C.S. § 955(emphasis added).

As discussed above, absent any allegations that the Plaintiffs were engaged in any work related duties involving Monacacy, the Plaintiffs cannot be considered employees of Monacacy. Therefore, the Plaintiffs cannot sustain a claim against Monacacy based upon an assertion that Monacacy is the Plaintiffs' employer and is, thus, liable as a principal under the PHRA.

While we conclude that Monocacy cannot be held liable as a principal-employer under the PHRA, we note that the Plaintiffs have argued that Monocacy may nonetheless be held liable under the PHRA on an aiding and abetting theory. The PHRA prohibits discrimination in employment and also forbids "any person . . . to aid, abet, incite, compel, or coerce the doing of any . . . unlawful discriminatory practice. . . or to attempt, directly or indirectly, to commit any . . . unlawful discriminatory practice." 43 Pa. Cons. Stat. Ann. § 955(e). Under this aiding and abetting provision of the statute: "A PHRA plaintiff may advance . . . liability claims against [persons] who bear responsibility for implementing an allegedly unlawful discriminatory practice." D'Altilio v. Dover Twp., No. 1:06-CV-1931, 2009 U.S. Dist. LEXIS 83663, at *45 (M.D. Pa. Sept. 14, 2009); see also Carlton v. City of Phila., No. Civ. A. 03-1620, 2004 U.S. Dist. LEXIS 5569 (E.D. Pa. Mar. 30, 2004) (stating that supervisory employees can be held liable as an aider and abettor based upon "the theory that . . . [they] share the discriminatory purposes and intent of the employer."). Furthermore, a defendant may be liable under § 955(e) either as a result of his own discriminatory conduct, or for "refusing to take prompt and remedial action against any discrimination suffered by" an employee. See Dici v. Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996).

While the Plaintiffs may conceivably be able to sustain a PHRA claim against Monocacy on this aiding and abetting theory, the cursory assertions in the current

complaint do not, in our view, articulate such a claim. (Doc. 1, ¶¶47-54.) Further, it is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Therefore, we recommend that Count II of the complaint be dismissed as to Monocacy, but without prejudice to the Plaintiffs endeavoring to articulate in an amended complaint their currently unarticulated aiding and abetting claim.

## F. Defendant Monacacy's Motion to Dismiss Count V For Failure To State A Cause Of Action For Violation Of 42 U.S.C. § 1983 Should Be Granted

In addition, Monacacy argues that it is immune from Section 1983 liability in that it is a private company and not a state actor acting under color of state law. (Doc. 15, pp. 12-13.) The Plaintiffs concede that a private company is not a state actor for the purpose of Section 1983. (Doc. 21, p. 9.) However, the Plaintiffs argue that a private actor can be considered a state actor when the private actor conspires with a state actor to deprive a Plaintiff of their rights. (Id., p. 10)

Section 1983 serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, the underlying constitutional and statutory claims advanced by the Plaintiffs must be reviewed in order to determine the sufficiency of a claim. Any civil rights claims brought under Section 1983 must allege and prove that the Defendant was acting under color of state law when the Defendant allegedly violated the Plaintiffs' rights. Here, the Plaintiffs attempt to sustain a §1983 claim against Monocacy, a private entity, based upon conclusory claims that Monocacy conspired with local officials to violate the Plaintiffs' equal protection rights. In this regard, it is clear that:

> To prevail on a § 1983 claim, a plaintiff must allege that the defendant acted under color of state law, in other words, that there was state action. Lugar v. Edmondson Oil Co., 457 U.S. 922, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). As relevant to this case, the Supreme Court has held that "[p]rivate parties who corruptly conspire with a judge in connection with [an official judicial act] are ... acting under color of state law within the meaning of § 1983." Dennis v. Sparks, 449 U.S. 24, 29, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); see also Lugar, 457 U.S. at 941, 102 S.Ct. 2744 ("[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment.").

Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175-76 (3d Cir. 2010) cert. denied, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (U.S. 2011).

Further, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. <u>D.R. v. Middle Bucks Area Vocational Tech. Sch</u>., 972 F.2d 1364, 1377 (3d Cir.1992); <u>see also Startzell v. City of Philadelphia</u>, 533 F.3d 183, 205 (3d Cir.2008) (stating that a conspiracy requires a 'meeting of the minds') (further citation omitted). This holding remains good law following <u>Twombly</u> and <u>Iqbal</u>, which, in the conspiracy context, require 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.' <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955." <u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 178 (3d Cir. 2010) <u>cert. denied</u>, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (U.S. 2011).

In this case, the Plaintiffs' complaint merely contains cursory assertions that "[t]he Defendants have jointly engaged in unlawful discriminatory practices," (Doc. 1, ¶33.), but the sole well-pleaded factual allegation in support of this claim is the assertion that some unnamed Monacacy employees twice hung a noose at the waste water facility for the purpose of racially intimidating the Plaintiffs after the Plaintiffs complained about the condition in which the Monacacy employees left the shower room. (Doc. 1, ¶ 16.) The Plaintiffs further allege that Monacacy, the City of York and the Sewer Authority did not take action to have the nooses promptly removed. (<u>Id.</u>, ¶ 21)

In our view, these spare assertions, standing alone, are insufficient to "assert facts from which a conspiratorial agreement can be inferred. <u>D.R. v. Middle Bucks Area</u>

Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.1992); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir.2008) (stating that a conspiracy requires a 'meeting of the minds') (further citation omitted)." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010). Indeed, we note that courts have addressed this very issue in similar circumstances, and held that the acts of private persons, hanging figures in effigy, do not without more allege sufficient facts to allow an inference of a conspiracy between state actors and these private parties. Gonzalez v. Feiner, 131 F. App'x 373, 377 (3d Cir. 2005)(*held*, the District Court properly dismissed all of the claims against the private property owners upon whose land the trees with hanging figures were located, because actions of private citizens, without any showing of state action, do not give rise to a cognizable § 1983 claim).

In sum, without the inclusion of further well-pleaded facts, the Plaintiffs' complaint presently does not "assert facts from which a conspiratorial agreement can be inferred. D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir.1992); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir.2008) (stating that a conspiracy requires a 'meeting of the minds') (further citation omitted)." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010). Therefore, the §1983 conspiracy claim leveled against Monocacy in Count V of the complaint should be dismissed in its current form.

### G. Defendant Monacacy's Motion to Dismiss Count VI For Intentional Infliction Of Emotional Distress

Finally, in its motion to dismiss Monacacy argues that the Plaintiffs have failed to state a claim for intentional infliction of emotional distress. In Pennsylvania, in order to state a claim for intentional infliction of emotional distress, a plaintiff must establish that 1) the conduct of defendant was intentional or reckless; 2) the conduct was extreme and outrageous; 3) the conduct caused emotional distress; and 4) the distress was severe. Williams v. Guzzardi, 875 F.2d 46, 52 (3d Cir. 1989).

The Plaintiffs allege that the outrageous conduct of the Monacacy employees in placing the noose on the premises twice led to the injuries of the Plaintiffs, in that they received dangerous work assignments after their complaints which resulted in physical injury. (Doc. 1.) Plaintiffs further allege emotional and mental anguish in addition to physical injury. (Doc. 1, ¶ 34.) In order to qualify as extreme and outrageous conduct, the alleged conduct must "go beyond all possible bounds of decency, and...be regarded as atrocious...and utterly intolerable in civilized society." Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987). See Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 85 (3d. Cir. 1987). The Pennsylvania Superior Court has also held that "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous." Johnson v. Caparelli, 404, 625 A.2d 668, 671 (Pa. Super Ct. 1993). See, e.g., Reimer

v. Tien, 514 A.2d 566, 569 (Pa. Super. 1986);  Jones v. Nissenbaum, Rudolph, &
Seidner, 368 A.2d 770,773-74 (Pa. Super. 1976).

In this case, viewing the allegations in this complaint in a light most favorable to
the Plaintiffs, we believe that the Plaintiffs's allegations that they were subjected to the
patently offensive and racially charged conduct like the display of a noose, something
that evokes powerful connotations, may be sufficient to allege a claim of intentional
infliction of severe emotional distress.  Therefore, Monacacy's motion to dismiss the
Plaintiffs' claims for the intentional infliction of emotional distress should be denied.

We note, however, that Monocacy has, in the alternative, requested that the
Plaintiffs be required to provide a more definite statement of this claim.  We agree that
greater clarity is needed on this particular claim, as it pertains to Monocacy, since the
complaint contains few well-pleaded facts that would permit an inference that
Monocacy approved, sanctioned, endorsed, or even knew of this allegedly offensive
conduct.  These are significant omissions in the Plaintiffs' complaint since not all acts
by Monocacy's employees expose the company itself as employer to liability for
intentional torts allegedly committed by these employees.  Quite the contrary:

> Under Pennsylvania law, a master-servant relationship is established [only]
> if the employer had the power to control and direct the conduct of the
> employee.  A master is liable for the torts of his servant [only] if the latter's
> tortious conduct was within the scope of his employment, i.e., conduct
> performed to further the business of the employer and not for the servant's
> personal purposes. Norton v. Railway Express Agency, Inc.,412 F.2d 112,
> 114 (3d Cir. 169); Mauk v. Wright, 367 F.Supp. 961, 965-66

(M.D.Pa.1973).   The existence of a master-servant relationship and conduct without the scope of employment are factual issues for the jury. Norton, supra; Anzenberger v. Nichols, 413 Pa. 543, 198 A.2d 309 (1964).

Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1276 (3d Cir. 1979).

In a case, the Plaintiff's complaint is vague or ambiguous in some important factual respects relating to whether the acts allegedly undertaken by Monocacy's employees were within the scope of their employment, an essential element of corporate *respondeat superior* liability for intentional torts. In such instances, where the pleadings contain material ambiguities, Federal Rule of Civil Procedure 12(e), Motion for a More Definite Statement provides, in part that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."  Fed.R.Civ.P. 12(e).

Here, the Defendants have, in the alternative, requested that the Court order the Plaintiff to make a more definite statement of his claims against them.  The defendants are entitled to such relief in a case such as this, where a plaintiff's complaint is vague and ambiguous on important factual matters.  Indeed, as the courts have observed, the vehicle for gaining an understanding of the plaintiff's claims is a motion for more

definite statement, made under Rule 12(e) of the Federal Rules of Civil Procedure. As the United States Court of Appeals for the Third Circuit has explained:

> Under Rule 12(e), a defendant may move for a more definite statement "[i]f a pleading...is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). The Rule 12(e) "motion shall point out the defects complained of and the details desired. Id. When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific...defense.... The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to obtain the factual basis underlying a plaintiff's claim for relief.

Thomas v. Independence Tp., 463 F.3d 285, 301 (3d Cir. 2006).

Since the Plaintiffs' complaint does not clearly articulate how or why Monocacy should be held responsible for these alleged intentional actions by unnamed employees, Monacacy's alternative motion for a more definitive statement with respect to Plaintiffs' complaint should be granted.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendant York Sewer Authority's Motion to Dismiss (Doc. 11.), should be DENIED. IT IS FURTHER RECOMMENDED that Defendant Monacacy Valley Electric, Inc.'s Motion to Dismiss (Doc. 10.), with respect to Counts I-II should be GRANTED, without prejudice to the Plaintiffs endeavoring to file an amended complaint alleging aiding and betting liability on Count II.   IT IS FURTHER RECOMMENDED that Defendant

Monacacy Valley Electric, Inc.'s Motion to Dismiss (Doc. 10.) should be GRANTED with respect to Count V of the Plaintiffs' complaint, which alleges a conspiracy to violate the Plaintiffs' civil rights, and DENIED with respect to the state tort of intentional infliction of emotional distress alleged in Count VI of the Plaintiffs' complaint. IT IS FURTHER RECOMMENDED that Monacacy's Motion for More Definite Statement as to Count VI should be GRANTED and the Plaintiffs should be directed to allege well-pleaded facts establishing grounds for holding Monacacy vicariously liable for these alleged intentional tortious acts by its unnamed employees.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 8th day of November 2012.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge