# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES L. HOLLINGHEAD and,** | : | |
| **MARK SIMPSON** | : | **Civil No. 1:12-CV-260** |
| **Plaintiffs** | : | |
| | : | **(Judge Connor)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CITY OF YORK, PENNSYLVANIA** | : | |
| **YORK SEWER AUTHORITY; and** | : | |
| **MONACACY VALLEY ELECTRIC,** | : | |
| **INC.,** | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

#### A.      Introduction

This is a workplace discrimination action brought by plaintiffs, James L. Hollinghead, seeking damages and other relief as a result of alleged discrimination in their employment with the City of York and the York Sewer Authority based upon their race.  The plaintiffs also allege that they were subjected to acts of retaliation at the hands of the City of York and the York Sewer Authority when they complained about these discriminatory actions.  Further, the plaintiffs allege that Monacacy Valley Electric, Inc., a private company which worked at the sewer facility, indulged in acts that rose to the level of intentional infliction of emotional distress, a tort under the common law of Pennsylvania, and conspired with state actors to violate their civil

rights. The plaintiffs initially brought this action on February 9, 2012, pursuant to Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), the Pennsylvania Human Relations Act (the, "PHRA"), 42 U.S.C. §1983, and asserted pendent common law claims under the laws of Pennsylvania. (Doc. 1, p.2.)

In their original complaint, the plaintiffs named three defendants: The City of York, Pennsylvania, the York Sewer Authority and Monacacy Valley Electric, Inc. (collectively, "defendants"). The City of York is a third class city of the Commonwealth of Pennsylvania operating under a home rule charter pursuant to the Third Class City Charter Law of 1957. (Id. at p. 3.) The primary office of the City of York is located at 50 West King Street, York, York County, Pennsylvania. (Id.) The plaintiffs allege that the City of York operates the York Sewer Authority (the "Sewer Authority"), an agency or department of the government of the City of York, which is responsible for the city sewer treatment plant[1]. (Id.) Monacacy Valley Electric, Inc. ("Monacacy"), in turn, is a corporation with the primary place of business at 1925 Frederick Pike, Littlestown, Pennsylvania. (Id. at p. 4.) Plaintiffs alleged that Monacacy had a contract with the Sewer Authority dated May 18, 2010, to provide work for the Sewer Authority for up to five hundred forty-five (545) days.

---

[1] Plaintiffs also refer to sewer treatment plant as the wastewater treatment plant.

(Id.)

After the defendants waived service, Monacacy and the York Sewer Authority moved to dismiss the complaint.[2] We issued a report and recommendation in which we recommended that York Sewer's motion to dismiss be denied in its entirety, and that Monacacy's motion to dismiss be granted in part. Specifically, we recommended that Monacacy's motion be granted with respect to Counts I, II, and V, and denying the motion with respect to Count VI, which asserted a state-law claim under Pennsylvania common law for intentional infliction of emotional distress. (Doc. 27.) We further recommended that Monacacy's motion for a more definite statement be granted, and that the plaintiffs' be given 20 days in which to file an amended complaint. (Id.) After consideration of the parties' objections, the district court entered an order adopting the report and recommendation. (Doc. 33.)

On December 14, 2012, the York Sewer Authority filed an answer to the complaint. (Doc. 34.) On January 2, 2013, the plaintiffs filed an amended complaint with respect to all defendants. (Doc. 35.) On January 9, 2013, the York Sewer Authority answered the amended complaint, and on January 15, 2013, the City of York also answered the amended pleading. (Docs. 36, 40.)

---

[2] The City of York did not move to dismiss, and instead filed an answer to the original complaint on April 10, 2012. (Doc. 13.)

On January 21, 2013, Monacacy moved to dismiss the amended complaint. Specifically, Monacacy moved to dismiss Count I of the amended complaint, which endeavored to re-allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., that were previously dismissed; Count II, which alleged that Monacacy "aided and abetted" the City of York in its alleged discrimination against the plaintiffs, in violation of Pennsylvania's Human Relations Act, 43 P.S. 955(e); Count V, which re-alleged civil rights violations under 42 U.S.C. § 1983 that were previously dismissed; and Count VI, which alleged a claim for intentional infliction of emotional distress.

**B.** **The Amended Complaint's Well-Pleaded Facts**

According to the well-pleaded facts set forth in the amended complaint – which are substantially similar to those set forth in the original complaint – this work-place discrimination began as a dispute regarding the cleanliness of a shower located at the sewer authority and used by both sewer authority employees and Monacacy Electric's workers. On July 7, 2010, Simpson expressed concern to Monacacy employees regarding the condition of the shower room at the Sewer Authority. (Am. Compl., ¶ 14.) According to Simpson, the shower was left in a messy and dirty condition by employees of Monacacy. (Id.) The shower was not to be used by the Monacacy employees, however, Simpson did not have a problem with the Monacacy employees

using the shower, but requested that they keep it clean. (Id.) Despite Simpson's protests, the employees of Monacacy continued to leave the shower room in a messy and dirty condition. (Id. at ¶ 15.) Simpson informed his supervisor, Chad Arnold, about the condition of the shower and was told to lock the door. (Id.) The next day a Monacacy supervisor asked about the lock in the presence of other Monacacy employees who responded in an "angry and menacing manner." (Id.)

Hollinghead then alleged that on July 16, 2010, he found a noose near the shower area in reaction to Simpson placing a lock on the shower room door, an anonymous gesture which the plaintiffs construed to be racially intimidating. (Id. at ¶ 16.) The plaintiffs then alerted others to their concerns. On July 18, 2010, Hollinghead reported the noose to Simpson, the Teamsters, Local 776 Union Steward. (Id. at ¶ 17.) On July19, 2010, Simpson reported the incident to Chad Arnold, the Operations Manager of the wastewater treatment plant. (Id. at ¶ 18.) On July 19, 2010, Mr. Arnold reported the incident to the General Manager of the wastewater treatment plant, Steve Douglas. (Id.) Three days later, on July 22, 2010, Simpson spoke with C. Kim Bracey, Mayor, City of York, about the incident. (Id. at ¶ 19.) The plaintiffs further allege that the noose was removed and placed in Mr. Douglas' office who displayed it on a hook in his office and showed it to Simpson. (Id. at ¶ 20.)

On July 28, 2010, a second noose was again seen in the sewer maintenance building and reported to Mr. Douglas, who again displayed it on a hook in his office and showed it to Simpson. (Id.) The plaintiffs allege that no action was taken by Monacacy or the Sewer Authority to have the noose removed or to avoid repetition of this conduct. (Id. at ¶ 21.) Through this inaction, the plaintiffs alleged that defendants consented to, permitted and condoned these racially charged and intimidating acts and failed to take remedial measures to address the intimidating and offensive acts. (Id. at ¶ 22.) According to the plaintiffs, the failure to discipline Monacacy employees for this conduct was a function of business concerns in the Sewer Authority. Specifically, the plaintiffs alleged that James Gross, Director of Public Works for York City and Mr. Douglas expressed to the Mayor that they did not want to have Monacacy removed from the sewer project. (Id. at ¶ 23.) In August 2010, Thomas Allen Ray, Deputy Business Administrator for Human Resources, City of York, conducted an investigation and met with the plaintiffs separately and gave each plaintiff a letter outlining his report. (Id. at ¶ 25.) Plaintiffs assert that Mr. Ray made a cursory review of the incidents and failed to perform a meaningful investigation in that he failed to speak with all relevant witnesses. (Id. at ¶ 26.) Mr. Ray generated a report in which he concluded that the noose was not racially motivated or displayed for the purpose of racial intimidation. (Id.) The plaintiffs

assert that by generating the report with those findings, Mr. Ray acted with the purpose of absolving the defendants of any wrong doing and therefore, consented to, permitted, or condoned the racially offensive actions of the Monacacy employees. (Id.)

In November 2010, the plaintiffs met with Mayor Bracey to discuss the racial climate at the treatment plant. (Id. at pp. 8-9) The plaintiffs explained to Mayor Bracey that after they complained to the City of York, Mr. Ray was more aggressive in seeking to punish African Americans. (Id.) The plaintiffs assert that after speaking with Mayor Bracey, they determined that the City of York was engaging in disparate treatment in that allegations of misconduct by non-Caucasian employees were being reported to the Mayor while allegations of misconduct by Caucasian employees were not being reported to her. (Id.)

In November 2010, the plaintiffs contacted the Equal Employment Opportunity Commission ("EEOC") regarding the complaints of racial discrimination. (Id. at ¶ 28.) The plaintiffs further allege that subsequent to contacting the EEOC, the plaintiffs started receiving dangerous work assignments that they were not previously assigned. (Id.) Plaintiffs allege that they suffered injuries on the job which would not have occurred if they had not received the retaliatory work assignments. (Id.) Hollinghead received assignments exposing him to hazardous chemicals and

conditions he had not been exposed to in the past and suffered injuries to his lungs. (Id.) Simpson was not granted assistance in situations where he was granted assistance in the past. (Id.) Additionally, Simpson was denied workers' compensation benefits that were previously approved. (Id.) The plaintiffs further alleged that the management at the City of York and the Sewer Authority did not require Caucasian employees to perform different and dangerous work assignments and the Caucasian employees were not required to direct or assist the African American plaintiffs with the assignments. (Id. at ¶ 29.)

## II.    Discussion

### A.    Motion to Dismiss-Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure, which governs motions to dismiss like the motion lodged by the defendants in this case, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007) continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir.2008) ]and culminating with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Id.* at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level." *Id.*  In keeping with the principles of *Twombly,*

the Supreme Court has underscored that a trial court must assess whether a complaint

states facts upon which relief can be granted when ruling on a motion to dismiss.  In

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court held that, when

considering a motion to dismiss, a court should "begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of

truth."  *Id.* at 679.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id*. at 678.  Rather, in conducting a review of the adequacy of complaint, the

Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

Thus, following *Twombly* and *Iqbal* a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler,* 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' *Iqbal,* 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' *Id.*" *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### B. Defendant Monacacy's Motion to Dismiss Counts I and V of the Amended Complaint Should Be Granted as Unopposed

In Counts I and V of the amended complaint, the plaintiffs alleged claims against Monacacy for alleged violations of Title VII of the Civil Rights Act of 1964,

and for violations of 42 U.S.C. § 1983, respectively. In its brief, Monacacy represents that the plaintiffs have conceded that these claims should be dismissed as to Monacacy, and the plaintiffs did not make any contrary assertion in their responsive brief. Accordingly, it appears the parties agree either that the Title VII and § 1983 claims were previously dismissed against Monacacy, or otherwise should be dismissed with respect to this defendant, and we, therefore, recommend that the district court grant Monacacy's motion to dismiss as unopposed with respect to Counts I and V of the amended complaint.

### C. Monacacy's Motion to Dismiss Count II Should Be Granted Because the Amended Complaint Contains Insufficient Allegations to Support a Claim Under an "Aiding and Abetting" Theory of Liability

In the amended complaint, the plaintiffs have reformulated their claim that Monacacy violated the PHRA by alleging that Monacacy "aided and abetted" the allegedly discriminatory practices of the plaintiffs' employer, the Sewer Authority, in violation of 43 P.S. § 955(e). In our previous report and recommendation, we concluded that the plaintiffs could conceivably state a claim under this particular section of the statute, but upon consideration of the facts alleged in the amended complaint, we find that the plaintiffs have failed to articulate a cognizable claim for aiding and abetting liability under the facts of this case.

As we previously observed, the PHRA prohibits discrimination in employment and also forbids "any person . . . to aid, abet, incite, compel, or coerce the doing of any . . . unlawful discriminatory practice . . . or to attempt, directly or indirectly, to commit any . . . unlawful discriminatory practice."  43 P.S. § 955(e).  Under this aiding and abetting provision of the statute:  "A PHRA plaintiff may advance . . . liability claims against [persons] who bear responsibility for implementing an allegedly unlawful discriminatory practice."  *D'Altilio v. Dover Twp.*, No. 1:06-CV-1931, 2009 U.S. Dist. LEXIS 83663, at *45 (M.D. Pa. Sept. 14, 2009); *see also Carlton v. City of Phila*, No. Civ. A. 03-1620, 2004 U.S. Dist. LEXIS 5569 (E.D. Pa. Mar. 30, 2004) (stating that supervisory employees can be held liable as aiders and abettors based upon "the theory that . . . [they] share the discriminatory purposes and intent of the employer.").  Furthermore, a defendant may be liable under § 955(e) either as a result of his own discriminatory conduct, or for "refusing to take prompt and remedial action against any discrimination suffered by" an employee.  *See Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996).

In our initial report and recommendation, we observed that the plaintiffs could conceivably  be able to sustain a PHRA claim against Monacacy on this aiding and abetting theory, but we concluded that the cursory assertions in the current complaint did not sufficiently articulate such a claim.  In the amended complaint, the plaintiffs

have reiterated their aiding and abetting theory of liability, but upon consideration we now find that the claim fails.

As a threshold matter, we have found no caselaw – and the plaintiffs have not cited to any – that would persuasively support a finding that a plaintiff could maintain an aiding and abetting claim against a corporate entity like Monacacy, which was neither the plaintiffs' employer, nor a supervisory employee of the plaintiffs' employer. But more importantly, even if the aiding and abetting theory of liability under the PHRA could be applied to a party like Monacacy, the facts alleged in this case are insufficient to support the theory in this case.

Section 955(e) of the PHRA is generally used in order to hold individual supervisory employees liable for unlawful discriminatory actions that they undertook in order to aid or abet their employer. *See, e.g.*, *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996); *see also Carlton v. City of Philadelphia*, Civ. A. No. 03-1620, 2004 WL 633279, at *8 (E.D. Pa. March 30, 2004) ("Only supervisory employees, not co-workers, may be liable under § 955(e), on the theory that only the former can share the discriminatory purpose and intent of the employer that is required for aiding and abetting."). Numerous cases decided since *Dici* have likewise applied that ruling in the context of individual supervisory employees who aid and abet the discriminatory practices of their employers. *See, e.g.*,

*Miles v. City of Philadelphia*, Civ. A. No. 11-4040, 2013 WL 125186, at *7 (E.D. Pa. Jan. 10, 2013); *Hanczyc v. Valley Distributing and Storage Company, Inc.*, Civ. A. No. 3:10-CV-2397, 2011 WL 1790093, at *3 (M.D. Pa. May 9, 2011) (finding that supervisors can be held liable under section 955(e)); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005) (supervisory employees may be liable in some cases on the theory that only they can "share the discriminatory purpose and intent of the employer that is required for aiding and abetting"); *Carlton, supra*.

In this case, it is undisputed that Monacacy was not the plaintiffs' employer, and cannot reasonably be construed to have been a supervisor of the plaintiffs. The plaintiffs have, at most, included several additional allegations in the amended complaint regarding unnamed Monacacy employees and a supervisor – none of whom, it should be noted, have been named as a defendant in this action. (Am. Compl., ¶¶ 40-48.) Indeed, the plaintiffs did not identify the supervisor in question, and made no attempt to join any individual Monacacy employees.

Moreover, we agree with the defendants that in the cases where courts have found that a supervisory employee could potentially be liable under section 955(e), the plaintiff had also stated a claim against that particular supervisor's employer. *See, e.g., Holocheck*, 385 F. Supp. 2d at 491. These cases thus suggest that in order for

a supervisory employee to be liable under the PHRA's aiding and abetting theory, the supervisor must share the discriminatory purpose and intent of the employer, and these cases further suggest that the aiding and abetting theory of liability applies to supervisory defendants whose employers are also defendants in the case based upon their own alleged discriminatory actions. That factual circumstance simply is not present in this case.

Furthermore, the plaintiffs' arguments in their brief – when contrasted with the allegations actually set forth in the amended complaint – serve to demonstrate just how tenuous this theory of liability is in this case with respect to Monacacy. The plaintiffs argue that Monacacy, a corporate entity that was not the plaintiffs' employer, placed itself "in control of plaintiffs' employment conditions while on premises pursuant to a contract with the employer." (Doc. 44, at 7.) Notably, there are actually no allegations in the amended complaint to reasonably support the argument that Monacacy controlled the plaintiffs' employment conditions.

Likewise, the plaintiffs argue in their briefs that Monacacy prevented the Mayor or the Sewer Authority from removing Monacacy from the project site, and that this somehow causes Monacacy to be liable under the PHRA. (Doc. 44, at 7.) For support, the plaintiffs refer the court to paragraphs 19 and 23 of the amended complaint, but these paragraphs refer to actions that Mr. Simpson, the Mayor, or two

16

City of York supervisors are alleged to have taken, and they do not support the plaintiffs' argument that Monacacy prevented the Mayor, or the Sewer Authority, or the City of York from taking steps to respond to the plaintiffs' complaints of discrimination or harassment by Monacacy employees.

Finally, other allegations in the amended complaint are, fairly construed, little more than broad, general, conclusory allegations unsupported by any additional plausible, even moderately specific factual claims. Thus, the plaintiffs do not allege that Monacacy actually had any direct contact with the Mayor, and the amended complaint does not contain allegations that Monacacy told either the City or the Sewer Authority that Monacacy could not be removed from the work site. Likewise, although the plaintiffs argue in their brief that Monacacy somehow prevented the Mayor from taking remedial action in response to the plaintiffs' complaints, the plaintiffs do not indicate what measures the Mayor was prevented from taking.

Upon consideration, therefore, given the lack of plausible factual allegations to support the charge that Monacacy actually took some steps to interfere with the Sewer Authority's ability to respond to the alleged harassing conduct by Monacacy employees, or that the company somehow prevented the Mayor from acting, we cannot agree with the plaintiffs that they have articulated a claim for "aiding and abetting" liability against Monacacy under the PHRA.

**D.** **Defendant Monacacy's Motion to Dismiss Count VI For Intentional Infliction Of Emotional Distress Should Be Granted Because the Plaintiffs Have Not Plausibly Alleged that they Suffered Physical Injury as the Result of Monacacy's Alleged Conduct**

Finally, in its motion to dismiss Monacacy renews its argument that the plaintiffs have failed to state a claim for intentional infliction of emotional distress. In Pennsylvania, in order to state a claim for intentional infliction of emotional distress, a plaintiff must establish that: 1) the conduct of defendant was intentional or reckless; 2) the conduct was extreme and outrageous; 3) the conduct caused emotional distress; and 4) the distress was severe. *Williams v. Guzzardi,* 875 F.2d 46, 52 (3d Cir. 1989). In addition, as discussed more fully below, Pennsylvania law also requires that a plaintiff suffer physical injury as a result of the intentionally tortious conduct. *Robinson v. May Department Stores Co.*, 246 F. Supp. 2d 440, 444 (E.D. Pa. 2003).

In this case, the plaintiffs allege that outrageous conduct of the unnamed Monacacy employees in placing a noose on the premises on two occasions led to the injuries of the plaintiffs, in that they received dangerous work assignments after their complaints, which resulted in physical injury suffered not upon witnessing the nooses themselves, but instead months later due to a change in work conditions imposed by

the Sewer Authority. Plaintiffs allege emotional and mental anguish in addition to physical injury.

In order to qualify as extreme and outrageous conduct, the alleged conduct must "go beyond all possible bounds of decency, and...be regarded as atrocious...and utterly intolerable in civilized society." *Buzcek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987). *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987). The Pennsylvania Superior Court has also held that "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous." *Johnson v. Caparelli*, 404, 625 A.2d 668, 671 (Pa. Super Ct. 1993). *See, e.g.*, *Reimer v. Tien*, 514 A.2d 566, 569 (Pa. Super. 1986); *Jones v. Nissenbaum, Rudolph, & Seidner*, 368 A.2d 770,773-74 (Pa. Super. 1976).

Following our review of the initial complaint, we found that the plaintiffs' allegations that they were subjected to patently offensive and racially charged conduct like the display of a noose, something that evokes powerful connotations, could be sufficient to support a claim of intentional infliction of severe emotional distress. Therefore, we recommended that Monacacy's motion to dismiss the plaintiffs' claims for the intentional infliction of emotional distress be denied, but at the same time we recommended that the district court grant Monacacy's request that

19

the plaintiffs be required to provide a more definite statement of this claim pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, since the original complaint contained few facts that could permit the inference that Monacacy approved, sanctioned, endorsed, or even knew of this alleged conduct, and thus we found the plaintiffs' suggestions regarding *respondeat superior* liability to have relatively thin support in the complaint.

Following submission of the amended complaint, Monacacy renewed its motion to dismiss this claim, on the grounds that the plaintiffs failed adequately to allege the existence of physical injury, which is a necessary element of a claim for intentional infliction of emotional distress under Pennsylvania law. *See, e.g., Robinson v. May Department Stores Co.*, 246 F. Supp. 2d 440, 444 (E.D. Pa. 2003)*; Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994) ("[T]o state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury."); *see also Frank v. Smith*, Civ. A. No. 3:09-CV-596, 2009 WL 5214978, at *4 (M.D. Pa. Dec. 29, 2009) ("[T]he defendants are correct in arguing that plaintiff could not prevail unless she shows that she suffered physical injury as a result of defendants' conduct . . . .") (finding that the plaintiff had satisfied this requirement because she allegedly suffered injuries that required medical treatment).

In this case, the plaintiffs do allege that they eventually suffered some physical injury, but review of the allegations show that the injuries were incurred months after Mr. Hollinghead first discovered the noose, and as the direct result of a subsequent change in the plaintiffs' employment at the Sewer Authority, not in response to witnessing the nooses months earlier.

The plaintiffs claim that the nooses were displayed in July 2010, (Am. Compl., ¶¶ 16, 20), but the injuries they claim to have suffered were allegedly the result of new, more dangerous work assignments that were given after the plaintiffs contacted the EEOC in November 2010 – four months later. Moreover, it is undisputed that Monacacy was not the plaintiffs' employer at any time, and there are insufficient plausible factual allegations to support an inference that the plaintiffs' new work assignments were somehow dictated or influenced by Monacacy after the plaintiffs contacted the EEOC.[3]

Thus, even assuming that the plaintiffs did suffer some physical injury as the result of more hazardous work assignments that they received from the Sewer Authority months after allegedly discovering nooses in a wash room, there are no

---

[3] Although we need not rely on this assertion in issuing our recommended disposition, we note that Monacacy has represented that Mr. Hollinghead testified during his deposition that the injuries he claims to have suffered did not occur until June 2011, or approximately 11 months after the nooses were discovered.

plausible allegations that could tie those alleged injuries to any conduct of Monacacy, or to the discovery of the nooses, which were allegedly placed by unnamed Monacacy employees. We thus agree with the defendants that there are insufficient allegations of physical injury necessary to support a claim for intentional infliction of emotional distress under Pennsylvania law.

## III. Recommendation

Accordingly, for the foregoing reasons, we find that the plaintiffs' amended complaint should be dismissed with respect to Monacacy. The plaintiffs have failed to articulate sufficient plausible facts to support their claims for violations of the PHRA, or for intentional infliction of emotional distress, against this corporate defendant. In addition, the plaintiffs have conceded that their claims under § 1983 and for violations of Title VII should be dismissed as to Monacacy. Therefore, IT IS RECOMMENDED THAT Monacacy's motion to dismiss the amended complaint (Doc. 42.) should be GRANTED with prejudice, and that the litigation be permitted to proceed against the remaining defendants.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file

with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of June 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge